TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litig. Section
ZAKARIYA K. VARSHOVI (Cal. Bar No. 349731)
Assistant United States Attorney
    300 North Los Angeles St., Ste. 7516
    Los Angeles, CA 90012
    Telephone: (213) 894-3994
    E-mail: Zakariya.Varshovi@usdoj.gov

*Attorneys for Defendants*
*United States of America,*
*Addi Garcia, Jason Jorski,*
*and Sylvia Ruiz*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| LUIS DELGADILLO, *et al.*,<br><br>        *Plaintiffs*,<br><br>        v.<br><br>CITY OF ANAHEIM, *et al.*,<br><br>        *Defendants*. | Case No. 8:25-cv-02401-FWS-ADS<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>**Hearing**<br>Date:      June 25, 2026<br>Time:     10:00 a.m.<br>Courtroom:  10D<br><br>[*Declarations and (Proposed) Order filed herewith*]<br><br>Hon. Fred W. Slaughter<br>U.S. District Judge |

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE that on June 25, 2026 at 10:00 a.m., Defendants will move to dismiss the First Amended Complaint before the Honorable Fred W. Slaughter, U.S. District Judge in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse.  As detailed in the accompanying memorandum of points and authorities, Defendant moves to dismiss on the following grounds:

- Plaintiffs' § 1983 claims must be dismissed because Defendants Garcia, Jorski, and Ruiz acted under the color of federal law at all times relevant to the allegations in the First Amended Complaint.

- Plaintiffs' *Bivens* claims must be dismissed under the Supreme Court's decision in *Egbert*.  Such claims arise in a new *Bivens* context and special factors counsel against recognizing a *Bivens* remedy in this case.

- Plaintiffs' battery and negligence claims are subject to the Federal Tort Claims Act's (the FTCA's) presentment and exhaustion requirements under 28 U.S.C. § 2675(a).  But Plaintiffs did not exhaust these claims via submission of a tort claim to the United States before filing suit.  Thus, such claims lack subject matter jurisdiction and must be dismissed.

- The United States has not waived its sovereign immunity under the FTCA to be sued under the Bane Act.  And even if it had so waived, Plaintiffs neither presented nor exhausted this claim via submission of a tort claim to the United States before filing suit.  Thus, this claim lack subject matter jurisdiction and must be dismissed, too.

As explained in the concurrently filed Declaration of Zakariya K. Varshovi (Varshovi Decl.), this motion is made following the Local Rule 7-3 conference of counsel, which was held on April 21, 2026.  Varshovi Decl. ¶¶ 2-8. Plaintiffs did not consent to dismissal of their claims.

/ / /

/ / /

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................2

INTRODUCTION ......................................................................................................4

FACTUAL BACKGROUND ......................................................................................5

      A.     U.S. Marshals Service (USMS)..................................................5

      B.     Pacific Southwest Regional Fugitive Task Force (PSWRFTF)....................5

      C.     PSWRFTF's Arrest and Apprehension of Victor Delgadillo ......................6

PROCEDURAL BACKGROUND ..............................................................................7

      A.     Plaintiffs' Action .........................................................................7

      B.     United States' Notice of Substitution..........................................7

      C.     Plaintiffs Did Not Exhaust Their Administrative Remedies Before Filing Suit ...........................................................................8

LEGAL STANDARD ................................................................................................8

ARGUMENT .............................................................................................................8

I.     Plaintiffs' Claims Against Special Deputy United States Marshals Jorski, Garcia, and Ruiz Must Be Dismissed..............................................8

      A.     Plaintiffs' § 1983 Claims Must Be Dismissed ................................9

      B.     Plaintiffs Cannot State a *Bivens* Claim .......................................11

II.    Plaintiffs' Claims Against the United States Must Be Dismissed ........................12

      A.     Plaintiffs' Battery and Negligence Claims Must Be Dismissed for Failure to Exhaust.......................................................12

      B.     Plaintiffs' Bane Act Claim Must Be Dismissed.........................................14

CONCLUSION ..........................................................................................................15

**INTRODUCTION**

Plaintiffs' action arises from the arrest and apprehension of Victor Delgadillo—a fugitive wanted for first-degree murder.  In seeking relief, Plaintiffs lodge numerous claims against numerous parties.  But their claims against the United States and Special Deputy U.S. Marshals Garcia, Jorski, and Ruiz fail at every turn.  For the reasons below, the Court should dismiss Plaintiffs' claims.

*First*, Plaintiffs' § 1983 claims must be dismissed because Defendants Garcia, Jorski, and Ruiz acted under the color of federal law, not state law, during the August 9, 2024 arrest and apprehension of Delgadillo.  Each served as Special Deputy U.S. Marshals and were members of federal fugitive task force led and supervised by a Deputy U.S. Marshal.  As a result, these claims lack subject matter jurisdiction and must be dismissed.

*Second*, Plaintiffs' *Bivens* claims must be dismissed under the Supreme Court's decision *Egbert*.  Such claims arise in a new *Bivens* context (a USMS fugitive task force) and special factors (numerous alternative remedial structures) counsel against recognizing a *Bivens* remedy in this case.

*Third*, Plaintiffs did not exhaust their battery and negligence claims, both of which are subject to the Federal Tort Claims Act's (the FTCA's) presentment and exhaustion requirements.  In fact, Plaintiffs did not present a tort claim to the United States until last week.  And because they admittedly did not submit a tort claim before filing suit, these claims lack subject matter jurisdiction and must be dismissed.

*Fourth*, Plaintiffs' Bane Act claim is premised on constitutional violations.  But the United States has not waived its sovereign immunity to be sued for such violations under the FTCA.  Plaintiff's Bane Act claim also fails under the FTCA because there is no private person analogue.  And even if the United States had waived its sovereign immunity, Plaintiffs neither presented nor exhausted this claim, either.  Thus, this claim lacks subject matter jurisdiction, too, and must be dismissed.

Accordingly, the Court should dismiss Plaintiffs' claims against the United States and Defendants Garcia, Jorski, and Ruiz.

## FACTUAL BACKGROUND

### A.    U.S. Marshals Service (USMS)

In enacting the Presidential Threat Protection Act of 2000, Congress directed the creation of "permanent Fugitive Apprehension Task Forces consisting of Federal, State, and local law enforcement authorities in designated regions of the United States, to be directed and coordinated by the United States Marshals Service, for the purpose of locating and apprehending fugitives." 34 U.S.C. § 41503(a); *see also* 28 U.S.C. § 566(e)(1)(B) (authorizing USMS to "investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General."). To carry out that directive, USMS oversees local and regional fugitive apprehension federal task forces. Declaration of Sean LoPiccolo (LoPiccolo Decl.), ¶ 2.

### B.    Pacific Southwest Regional Fugitive Task Force (PSWRFTF)

PSWRFTF is one of USMS's regional fugitive federal task forces directed and overseen by the USMS. *Id.*; *see Pacific Southwest Regional Fugitive Task Force*, USMARSHALS.GOV, www.usmarshals.gov/what-we-do/fugitive-investigations/fugitive-task-forces/pacific-southwest-regional-fugitive-task-force (last visited April 29, 2026). It began operations in 2002 and is headquartered in Los Angeles County, California. LoPiccolo Decl. ¶ 2.

To carry out its obligations, PSWRFTF has full-time USMS employees, including Deputy U.S. Marshals. *Id.* ¶ 3; Branch Decl. ¶¶ 2, 4. But USMS also deputizes state and local law enforcement officers as Special Deputy U.S. Marshals to carry out the functions and authority of Deputy U.S. Marshals in connection with fugitive task force operations. LoPiccolo Decl. ¶ 3; 28 C.F.R. § 0.112(b) (authorizing USMS to deputize federal, state, or local law enforcement officers to perform the functions of a Deputy U.S. Marshal whenever USMS's law enforcement needs so require). Moreover, once sworn and formally deputized, these Special Deputy U.S. Marshals are assigned by his or her respective law enforcement agency to a USMS fugitive task force to undertake federal fugitive apprehension operations supervised and directed by USMS. LoPiccolo Decl. ¶ 4.

And when a Special Deputy U.S. Marshal is assigned to PSWRFTF, s/he is under the day-to-day supervision and direction of USMS; he or she is not under the supervision or direction of his or her respective state or local law enforcement agency.  *Id.*

### C.    PSWRFTF's Arrest and Apprehension of Victor Delgadillo

At the time of his arrest and apprehension on August 9, 2024, Delgadillo was a fugitive from Iowa wanted for first-degree murder.  LoPiccolo Decl. ¶ 6; Declaration of Byron Branch (Branch Decl.), ¶ 3, Exh. A (warrant for Delgadillo's arrest issued).   In July of 2024, PSWRFTF began its efforts to apprehend Delgadillo in southern California.  LoPiccolo Decl. ¶ 7.

PSWRFTF assigned Delgadillo's arrest warrant to Deputy U.S. Marshal Byron Branch.  Branch Decl. ¶ 4.  Deputy U.S. Marshal Branch managed and supervised the PSWRFTF team tasked with locating and apprehending Delgadillo.  *Id.*  This team included Special Deputy U.S. Marshals Addi Garcia, Jason Jorski, and Sylvia Ruiz.  *Id.* ¶ 4-5 ("Based on USMS records and information personally known by me, Garcia, Jorski, and Ruiz were properly sworn and appointed Special Deputy United States Marshals assigned to PSWRFTF before the August 9, 2024 operation to apprehend and arrest Delgadillo"); LoPiccolo Decl. ¶ 8 (averring that "[b]efore Delgadillo's arrest, Garcia, Jorski, and Ruiz were duly sworn as Special Deputy United States Marshals and assigned by their employer (the California Department of Corrections and Rehabilitation) to PSWRFTF for fugitive apprehension operations").[1]

At the time of the August 9, 2024 operation to apprehend and arrest Delgadillo, Deputy U.S. Marshal Branch personally managed and supervised the PSWRFTF team that

---

[1] *See also* LoPiccolo Decl. ¶ 9, Exhs. A-C (attaching Form USM-3Bs for the deputization of Special Deputy United States Marshals Garcia, Jorski, and Ruiz and averring that deputization was valid and effective when Deputy United States Marshal Branch's PSWRFTF team encountered Delgadillo in Anaheim, California on August 9, 2024); *id.* ¶ 5 ("When a state or local officer is deputized as a Special Deputy United States Marshal, s/he must complete a Special Deputation Oath of Office, Authorization and Appointment document, known as a Form USM-3B.  In completing a Form USM-3B, a Special Deputy United States Marshal agrees to faithfully execute lawful orders issued under the authority of the United States and directed to the United States Marshal, USMS, or an appropriate federal official.").

included Special Deputy U.S. Marshals Garcia, Jorski, and Ruiz.  Branch Decl. ¶¶ 5-6. Each reported to him and PSWRFTF; they did not report to the State of California or the California Department of Corrections and Rehabilitation.  *Id.* ¶ 6; LoPiccolo Decl. ¶ 11 ("During August 9, 2024 arrest and apprehension of Delgadillo, Special Deputy United States Marshals Garcia, Jorski, and Ruiz reported to Deputy United States Marshal Branch and USMS, not the California Department of Corrections and Rehabilitation.").

The California Department of Corrections and Rehabilitation played no role in PSWRFTF's efforts to arrest and apprehend Delgadillo.  LoPiccolo Decl. ¶ 11.  Nor did the State of California or the California Department of Corrections and Rehabilitation have any role in supervising, directing, or managing Special Deputy U.S. Marshals Garcia, Jorski, and Ruiz during their involvement with Deputy U.S. Marshal Branch's PSWRFTF team, including at the time of the August 9, 2024 operation to arrest and apprehend Delgadillo. *Id.*

## PROCEDURAL BACKGROUND

### A.    Plaintiffs' Action

On September 9, 2025, Plaintiffs filed suit in Orange County Superior Court against the City of Anaheim, among others.  Dkt. No. 1.  On October 23, 2025, the City of Anaheim removed Plaintiffs' suit to this Court.  *Id.*

On November 19, 2025, Plaintiffs filed a First Amended Complaint, naming Special Deputy United States Marshals Garcia, Jorski, and Ruiz as defendants, among others.  Dkt. No. 15.

### B.    United States' Notice of Substitution

On March 27, 2026, the United States substituted itself for Defendants Garcia, Jorski, and Ruiz as to Plaintiffs' claims for battery (Claim 8), negligence (Claim 9), and the Bane Act, Cal. Civ. Code § 52.1 (Claim 10).  Dkt. No. 45.  As the United States explained in its Notice of Substitution, Defendants Garcia, Jorski, and Ruiz remain individually named defendants for Plaintiffs' claims under 42 U.S.C. § 1983 (Claims 1, 2, and 5) and *Bivens* (Claims 6 and 7). *Id.*

**C.      Plaintiffs Did Not Exhaust Their Administrative Remedies Before Filing Suit**

Plaintiffs did not exhaust their administrative remedies by presenting an administrative tort claim to USMS before filing suit.  Declaration of Jose Javier Santos Mimoso (Mimoso Decl.), ¶ 5 (averring that "a thorough search [on April 16, 2020] of all available administrative claim records of OGC to determine whether an administrative tort claim was presented to the USMS by Luis Delgadillo or Melissa Hernandez in relation to the August 9, 2024 incident involving Victor Delgadillo revealed no record of the receipt by the USMS of an administrative tort claim by either Luis Delgadillo or Melissa Hernandez").  In fact, no such claim was submitted until April 20, 2026.  Varshovi Decl. ¶ 7.

<h2 style="text-align:center">LEGAL STANDARD</h2>

***Dismissal under Rule 12(b)(1).***  Under Rule 12(b)(1), a complaint must allege facts sufficient to establish subject matter jurisdiction, and in its review, the Court may consider "evidence outside the pleadings," *Gordon v. United States*, 739 F. App'x 408, 411 (9th Cir. 2018), including "any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

***Dismissal under Rule 12(b)(6).***  Under Rule 12(b)(6), a complaint must state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  And while the Court must accept factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

<h2 style="text-align:center">ARGUMENT</h2>

**I.      Plaintiffs' Claims Against Special Deputy United States Marshals Jorski, Garcia, and Ruiz Must Be Dismissed**

Plaintiffs have asserted three § 1983 claims against Special Deputy United States Marshals Jorski, Garcia, and Ruiz, as well as two *Bivens* claims against them.  Because Special Deputy United States Marshals Jorski, Garcia, and Ruiz acted under the color of federal law, Plaintiffs' § 1983 claims lack subject matter jurisdiction and should be

dismissed under Rule 12(b)(1). *See, e.g.*, *Simon v. Bostic*, 2024 WL 4941028, at *2 (S.D. Cal. Dec. 2, 2024) ("Plaintiff has not pleaded any facts alleging that the named or unnamed Defendants were acting under the color of state law. Based on the facts alleged in the complaint, the Court does not have subject matter jurisdiction over Plaintiff's § 1983 claims against any of those Defendants.") (citing *Peng v. Mei Chin Penghu*, 335 F.3d 970, 980 (9th Cir. 2003) (affirming dismissal under Fed. R. Civ. P. 12(b)(1) for failure to allege state action in § 1983 claim)). And because Plaintiffs' *Bivens* claims arise in a new *Bivens* context and special factors counsel against recognizing a *Bivens* remedy in this case, they fail to state a claim under Rule 12(b)(6). *See, e.g.*, *Alicea v. Remulla*, 2024 WL 6824855, at *3 (N.D. Cal. Apr. 15, 2024) ("this Court concludes that Plaintiff's Bivens claims fails to state a claim under Supreme Court precedent, as outlined in *Egbert*").

## A. Plaintiffs' § 1983 Claims Must Be Dismissed

To establish § 1983 liability, "a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011). But where, as here, state officials participate in a federal program, in which "the source of authority for the program is federal in nature and the state officials' participation in the challenged conduct is subject to the immediate control of a federal supervisor, those officials act under color of federal law, not under color of state law." *Thai v. County of Los Angeles*, 127 F.4th 1254, 1260 (9th Cir. 2025).

Here, the source of authority for PSWRFTF is explicitly federal in nature. PSWRFTF, along with the other regional fugitive task forces, were created under the Presidential Threat Protection Act of 2000, in which Congress expressly directed the creation of "permanent Fugitive Apprehension Task Forces consisting of Federal, State, and local law enforcement authorities in designated regions of the United States, to be directed and coordinated by the United States Marshals Service, for the purpose of locating and apprehending fugitives." 34 U.S.C. § 41503(a); *see also* 28 U.S.C. § 566(e)(1)(B) (authorizing USMS to "investigate such fugitive matters, both within and outside the

United States, as directed by the Attorney General."). And to that end, USMS is authorized, as it did here, to deputize state law enforcement officers as Special Deputy U.S. Marshals to carry out the functions and authority of Deputy U.S. Marshals in connection with fugitive task force operations. *See* 28 C.F.R. § 0.112(b) (authorizing USMS to deputize federal, state, or local law enforcement officers to perform the functions of a Deputy U.S. Marshal whenever USMS's law enforcement needs so require); Branch Decl. ¶ 4; LoPiccolo Decl. ¶¶ 3-4, 8-9; Exhs. A-C.

Thus, "the federal nature of" PSWRFTF "is consistent with many other law enforcement programs that involve both state and federal employees whose officers have been held not liable to suit under § 1983." *Thai*, 127 F.4th at 1261; *id.* (collecting cases). Indeed, with respect to "USMS Fugitive Task Forces, every court to have considered the issue has held that these Task Forces and their members (including deputized local or state law enforcement) are acting pursuant to federal law and federal authority." *Escobar v. Correa*, 2024 WL 4042122, at *7 (S.D.N.Y. Sept. 4, 2024). This case is no exception.

And as to control and supervision, both before and at the time of the August 9, 2024 operation to apprehend and arrest Delgadillo, Special Deputy U.S. Marshals Garcia, Jorski, and Ruiz were under the supervision and direction of the Deputy United States Marshal Branch and the USMS. Branch Decl. ¶¶ 5-6; LoPiccolo Decl. ¶ 6. Special Deputy U.S. Marshals Garcia, Jorski, and Ruiz were not acting as agents or employees of the State of California in connection with the August 9, 2024 arrest operation of Delgadillo. *Id.* The California Department of Corrections and Rehabilitation played no role in PSWRFTF's efforts to apprehend Delgadillo. LoPiccolo Decl. ¶ 11. Nor did the State of California or the California Department of Corrections and Rehabilitation have any role in supervising, directing, or managing Special Deputy United States Marshals Garcia, Jorski, and Ruiz during their involvement with Deputy United States Marshal Branch's PSWRFT team, including at the time of the August 9, 2024 operation to apprehend and arrest Delgadillo. *Id.*

In short, Special Deputy U.S. Marshals Garcia, Jorski, and Ruiz, acted under the

color of federal law during Delgadillo's arrest and apprehension. *Thai*, 127 F.4th at 1262 ("Sanchez and Villasenor engaged in the conduct that allegedly deprived [plaintiffs] of their rights while operating within a federal program, under the daily supervision and immediate control of a federal officer, and therefore acted under color of federal law.").

Thus, Plaintiffs' § 1983 claims against Special Deputy U.S. Marshals Garcia, Jorski, and Ruiz must be dismissed.

### B.    Plaintiffs Cannot State a *Bivens* Claim

Courts follow a two-step process to determine if a *Bivens* remedy is available. *Egbert v. Boule*, 596 U.S. 482, 492 (2022). First, the court asks "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* at 492. (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). And second, if a new *Bivens* context is presented, then "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* Plaintiffs do not—*and cannot*—state a *Bivens* claim against Special Deputy U.S. Marshals Jorski, Ruiz, and Garcia.

PSWRFTF and its members, including its Special Deputy U.S. Marshals, present a new *Bivens* context. For starters, Plaintiffs' claim "involves a new category of defendants operating under a different legal mandate." *Sheikh v. U.S. Dep't of Homeland Sec.*, 106 F.4th 918, 925 (9th Cir. 2024). Special Deputy U.S. Marshals participating in a USMS task force operate under a unique statutory authority. 34 U.S.C. § 41503(a). At the same time, Special Deputy U.S. Marshals in this context are a new category of *Bivens* defendants. *See, e.g.*, *Robinson v. Sauls*, 102 F.4th 1337, 1344 (11th Cir. 2024) ("[o]fficers participating in a USMS joint task force are a new category of defendants."); *Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1358 (10th Cir. 2024) ("agents of the USMS are a new category of defendant").

And special factors counsel hesitation. Existence of "alternative remedial structures" by itself is "reason enough to 'limit the power of the Judiciary to infer a new

*Bivens* cause of action.'" *Egbert* at 493 (quoting *Ziglar*, 582 U.S. at 137). Here, USMS has an internal grievance process, and is part of the Department of Justice, which has an Office of the Inspector General to investigate misconduct. 28 C.F.R. § 0.111(n) (authorizing investigations into misconduct by the USMS Director); 5 U.S.C. § 413 (authorizing DOJ OIG). Indeed, as courts have found, USMS grievance procedures and DOJ OIG "foreclose a *Bivens* action." *See Robinson*, 102 F.4th at 1346-134; *cf. Pettibone v. Russell*, 59 F.4th 449, 456-57 (9th Cir. 2023) (finding the existence of an Inspector General grievance process sufficient to preclude a *Bivens* remedy). This is reason enough to dismiss Plaintiffs' *Bivens* claims. The FTCA offers further reason to do so. Plaintiffs may and, in fact, are pursuing a damages claim against the United States under the FTCA. This is yet another potential, alternative avenue for relief foreclosing a *Bivens* remedy. *See, e.g.*, *Schwarz v. Meinberg*, 761 F. App'x 732, 734-35 (9th Cir. 2019) ("Schwarz had alternative processes by which to pursue his claims and remedies. For example, he could have sought a remedy … under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)").

The Supreme Court cautioned that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)). Because many such reasons exist, Plaintiffs' *Bivens* claims should be dismissed.

## II.    Plaintiffs' Claims Against the United States Must Be Dismissed

Plaintiffs have asserted battery and negligence claims as well as a Bane Act claim against the United States. As detailed below, all three claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

### A.    Plaintiffs' Battery and Negligence Claims Must Be Dismissed for Failure to Exhaust

The FTCA provides the exclusive remedy for claims arising from the alleged negligent acts or omissions of a federal employee. 28 U.S.C. § 1346(b). But a party must exhaust their administrative remedies prior to filing suit. 28 U.S.C. § 2675(a). A party, however, cannot file an action under the FTCA "without first filing her claim with an

appropriate federal agency and either receiving a conclusive denial of the claim from the agency or waiting for six months to elapse without a final disposition of the claim being made." *Jerves v. United States*, 966 F.2d 517, 519 (9th Cir. 1992). And where, as here, a party files suit before either condition is met, the action must be dismissed for lack of subject matter jurisdiction. *McNeil v. United States*, 508 U.S. 106, 111-12 (1993).

Here, Plaintiffs filed suit before exhausting their administrative remedies as required under the Federal Tort Claims Act, 28 U.S.C. § 2675(a). *See* Mimoso Decl. ¶ 5 (averring that on April 16, 2026, a thorough search of all available administrative claim records within USMS to determine revealed <u>no</u> record of the receipt by the USMS of an administrative tort claim by either Luis Delgadillo or Melissa Hernandez). In fact, no such claim was submitted until April 20, 2026. Varshovi Decl. ¶ 7. As a result, Plaintiffs' battery and negligence claims must be dismissed for lack of subject matter jurisdiction. *See, e.g.*, *D.L. by & through Junio v. Vassilev*, 858 F.3d 1242, 1245 (9th Cir. 2017) ("[T]he FTCA's exhaustion requirement demands that a plaintiff exhaust his administrative remedies before he files an FTCA claim in federal court. . . . [A] prematurely filed FTCA claim must be dismissed even if the plaintiff ultimately exhausts his administrative remedies") (citing *McNeil*, 508 U.S. at 111-12); *Jerves*, 966 F.2d at 519; *Velasquez v. United States*, 2014 WL 3837294, at *2 (E.D. Cal. Aug. 1, 2014) ("The Court lacks authority to permit a lawsuit to go forward [under the FTCA] if it was filed before the agency denied the administrative claim or was afforded a full six months to address the claim.") (quoting *Wright v. City of Santa Cruz*, 2014 WL 3058470, at *5 (N.D. Cal. July 3, 2014)).

Nor would leave to amend be proper. *See, e.g.*, *Martinez v. United States*, 2022 WL 1271143, at *2 (S.D. Cal. Apr. 28, 2022) ("The premature filing of an FTCA action cannot be cured by the filing of an amended complaint"); *Sparrow v. United States Postal Serv.*, 825 F. Supp. 252, 255 (E.D. Cal. 1993) ("Because § 2675(a) of the FTCA requires that an administrative claim be finalized at the time the complaint is filed, plaintiff's complaint cannot be cured through amendment").

Accordingly, the Court should dismiss Plaintiffs' battery and negligence claims for lack of subject matter jurisdiction and without leave to amend.

**B.    Plaintiffs' Bane Act Claim Must Be Dismissed**

California's Bane Act (Cal. Civ. Code § 52.1) allows suit "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 331 (1998). As reflected in Plaintiffs' First Amended Complaint, their Bane Act claim seeks relief for purported violations of Delgadillo's constitutional rights. *See, e.g.*, FAC ¶ 133 (alleging that Special Deputy U.S. Marshals Ruiz, Jorski, and Garcia "interfered with [Delgadillo's] civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property"); *id.* ¶¶ 134-136.

But it is well settled that under the FTCA, "the United States simply has not rendered itself liable . . . for constitutional tort claims." *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994). And because the FTCA has not waived the United States' sovereign immunity for constitutional torts, Plaintiffs' claim under the Bane Act fails. *See, e.g.*, *Lewis v. Mossbrooks*, 788 F. App'x 455, 460 (9th Cir. 2019) ("The district court lacked subject matter jurisdiction over Lewis' Bane Act claim. The FTCA waives sovereign immunity only where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. Based on the terms of that waiver, *F.D.I.C. v. Meyer*, established that the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.") (internal citations and quotations omitted); *Blanchard v. County of Los Angeles, et al.*, 2022 WL 17081308, at *3 (C.D. Cal. Aug. 25, 2022) ("the purpose of the FTCA necessitate a finding that neither federal nor state constitutional violations may be the basis of an FTCA claim, even when brought under the Bane Act"); *Boules v. Doe 4*, 2025 WL 2074489, at *4 (C.D. Cal. June 16, 2025) ("the

Court finds the Bane Act claim is barred by sovereign immunity").[2]  This is reason enough to dismiss Plaintiffs' Bane Act claim.

Plaintiffs' Bane Act claim also fails under the FTCA because there is no private person analogue.  *Lewis*, 788 F. App'x at 460 (disallowing Bane Act claim that attempted to "import[] a constitutional violation—the use of excessive force—that could not otherwise be the basis for a claim against a private person").  The FTCA does not waive the United States' sovereign immunity for the claims Plaintiff raises under California's Bane Act because a private person cannot be liable for the violations under the statute.  *See, e.g.*, *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998) ("When [plaintiffs] assert that [private] defendants interfered with [their Fourth Amendment rights against unreasonable search and seizure] by directly violating them, they are mistaken: Only the government or its agents can do so."); *Vasquez v. Cty. of Los Angeles*, 594 F. App'x 386, 387 (9th Cir. 2015) ("an excessive force claim under the Bane Act requires state action") (internal citation omitted).

And even if the United States waived its sovereign immunity under the FTCA to be sued under the Bane Act (it did not), Plaintiffs neither presented nor exhausted this claim before filing suit, either.  Mimoso Decl. ¶ 5; Varshovi Decl. ¶ 7.  Thus, as with their battery and negligence claims, this claim lacks subject matter jurisdiction, too, and must be dismissed.  *See, e.g.*, *Jerves*, 966 F.2d at 519.

## CONCLUSION

For the forgoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' claims against the United States and Defendants Jorski, Ruiz, and Garcia.

---

[2]  The United States acknowledges that other courts have found that Bane Act claims premised on state constitutional claims are sufficient to state a claim.  *See, e.g., Voeltz v. United States,* No. 5:21-cv-00151-JWH-KK, Dkt. 20 at 7 (C.D. Cal. Apr. 14, 2022) (citing *Plascencia v. United States*, 2018 WL 6133713 (C.D. Cal. May 25, 2018)); *Peralta v. United States*, 475 F. Supp. 3d 1086, 1098 (C.D. Cal. 2020).  But it respectfully maintains these decisions were wrongly decided.  *See, e.g., Lewis*, 788 F. App'x at 460; *Blanchard*, 2022 WL 17081308, at *3; *Boules*, 2025 WL 2074489, at *4.

Dated: April 29, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

_/s/ Zakariya K. Varshovi_ *
ZAKARIYA K. VARSHOVI
Assistant United States Attorney

_Attorneys for Defendants_
_United States of America,_
_Addi Garcia, Jason Jorski,_
_and Sylvia Ruiz_

---

* Pursuant to Local Rule 11-6.1, the filer certifies that this memorandum of points and authorities contains 4,292 words.

16