# Exhibit A

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (SBN 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LUIS DELGADILLO, individually and as successor in interest to VICTOR DELGADILLO, deceased; and MELISSA HERNANDEZ, individually and as successor in interest to VICTOR DELGADILLO, deceased,

Plaintiffs,

vs.

CITY OF ANAHEIM; STATE OF CALIFORNIA; MICHAEL LEE; and DOES 4-10, inclusive,

Defendants.

Case No. 8:25-cv-02401 FWS (ADSx)

*Honorable Fred W. Slaughter*

**THIRD AMENDED COMPLAINT FOR DAMAGES**

1. Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)
2. Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)
3. Municipal Liability – Inadequate Training (42 U.S.C. § 1983)
4. Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)
5. Substantive Due Process (42 U.S.C. § 1983)

~~6. Unreasonable Search and Seizure—Excessive Force (*Bivens*)~~
~~7. Substantive Due Process (*Bivens*)~~
~~8.~~6. Battery
~~9.~~7. Negligence
~~10.~~8. Bane Act (Cal. Civil Code 52.1)

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

LUIS DELGADILLO, individually and as successor in interest to VICTOR DELGADILLLO, deceased, and MELISSA HERNANDEZ, individually and as successor in interest to VICTOR DELGADILLO, bring this Complaint against Defendants CITY OF ANAHEIM, ~~COUNTY OF SAN BERNARDINO,~~ STATE OF CALIFORNIA, MICHALE LEE and DOES ~~5~~4-10, inclusive, and hereby alleges as follows:

## INTRODUCTION

1. This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal officer-involved shooting of Victor Delgadillo on August 9, 2024.

## JURISDICTION AND VENUE

2. This case arises under 42 U.S.C. § 1983 and 1988 as well as California law. This court has subject matter jurisdiction over Plaintiffs' federal question and civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over Plaintiffs' supplemental state law claims under 28 U.S.C. § 1367 as those claims arise out of the same transactions and occurrences as Plaintiff's federal question claims.

3. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because all incidents, events, and occurrences giving rise to this action occurred in the City of Anaheim, County of Orange, California.

## PARTIES

4. At all relevant times, Decedent VICTOR DELGADILLO ("DECEDENT") was an individual residing in the City of Marshalltown, Iowa.

5. Plaintiff LUIS DELGADILLO ("Plaintiff DELGADILLO") is an individual residing in the City of Marshalltown, Marshall County, Iowa. Plaintiff is the natural father of Decedent. Plaintiff sues both in his individual capacity as the

father of Decedent and in a representative capacity as the successor-in-interest to Decedent pursuant to California Code of Civil Procedure § 377.30. Plaintiff seeks survival damages, wrongful death damages, and punitive damages under federal and state law.

6. Plaintiff MELISSA HERNANDEZ ("Plaintiff HERNANDEZ") is an individual residing in the City of Marshalltown, Marshall County, Iowa. Plaintiff is the natural mother of Decedent. Plaintiff sues both in her individual capacity as the mother of Decedent and in a representative capacity as the successor-in-interest to Decedent pursuant to California Code of Civil Procedure § 377.30. Plaintiff seeks survival damages, wrongful death damages, and punitive damages under federal and state law.

7. At all relevant times, Defendant CITY OF ANAHEIM ("COUNTY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Anaheim Police Department ("APD") and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, CITY was the employer of Defendants MICHAEL LEE and DOES ~~4~~5-6~~5~~.

~~8. At all relevant times, Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is and was a municipal corporation existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Bernardino County Sheriff's Department ("SBSD") and its agents and employees and the San Bernardino District Attorney's Office ("SBDA") and its~~

~~agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with the laws of the United States and of the State of California.~~

~~9.~~8. At all relevant times, Defendant STATE OF CALIFORNIA ("STATE") is and was a duly organized public entity existing under the laws of the State of California. STATE is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the California Department of Corrections and Rehabilitation ("CDCR") and its agents and employees. At all relevant times, Defendant STATE was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, STATE was the employer of ADDI GARCIA, JASON JORSKI, and SYLVIA RUIZ.

~~10. At all relevant times, ADDI GARCIA ("GARCIA") was duly appointed by STATE as a CDCR Special Agent and employee or agent of STATE, subject to oversight and supervision by STATE's elected and non-elected officials. At all relevant times, GARCIA was part of a Fugitive Apprehension Team that acted jointly with a U.S. Marshal federal task force and was subject to oversight and supervision by U.S. Marshals. At all relevant times, GARCIA was acting under color of federal law, within the course and scope of her duties as an agent and employee for STATE and within the course and scope her duties as an agent and employee for the U.S. Marshal task force.~~

~~11. At all relevant times, JASON JORSKI ("JORSKI") was duly appointed by STATE as a CDCR Special Agent and employee or agent of STATE, subject to oversight and supervision by STATE's elected and non-elected officials. At all relevant times, JORSKI was part of a Fugitive Apprehension Team that acted jointly with a U.S. Marshal federal task force and was subject to oversight and supervision~~

by U.S. Marshals. At all relevant times, JORSKI was acting under color of federal law, within the course and scope of her duties as an agent and employee for STATE and within the course and scope his duties as an agent and employee for the U.S. Marshal task force.

9. At all relevant times, SYLVIA RUIZ ("RUIZ") was duly appointed by STATE as a CDCR Special Agent and employee or agent of STATE, subject to oversight and supervision by STATE's elected and non-elected officials. At all relevant times, RUIZ was part of a Fugitive Apprehension Team that acted jointly with a U.S. Marshal federal task force and was subject to oversight and supervision by U.S. Marshals. At all relevant times, RUIZ was acting under color of federal law, within the course and scope of her duties as an agent and employee for STATE and within the course and scope her duties as an agent and employee for the U.S. Marshal task force.=

12.10. At all relevant times, Defendant MICHAEL LEE ("LEE") was a police officer for APD who was acting under color of state law and within the course and scope of his duty as a police officer for APD. LEE was acting with the complete authority and ratification of his principal, Defendant CITY.

13.11. At all relevant times, Defendants DOES 54-65 are police officers for APD who were acting under color of state law and within the course and scope of their duties as police officers for the APD. DOES 4-5 were acting with the complete authority and ratification of their principal, Defendant CITY.

14.12. At all relevant times, Defendants DOES 67-8 ("DOE OFFICERS") were and are law enforcement officers who were part of a joint U.S. Marshals federal task force. The task force was and is comprised of federal deputy marshals and local law enforcement agents and employees., including agents and employees from COUNTY. The agents and employees for COUNTY were acting under color of law within the course and scope of their duties as agents and employees for COUNTY and within the course and scope of their duties as agents and employees

for the U.S. Marshal task force. The deputy marshals were acting under color of federal law as agents and employees of the U.S. Marshals Services ("USMS") for the United States and within the course and scope of their duties as agents and employees of the U.S. Marshals Services for the United States. DOES 76-8 were acting with the complete authority and ratification of their principals, the United States, the U.S. Marshals and Defendant COUNTY.

15.13. Defendant DOES 9-10 areis a managerial, supervisorial, and policymaking employee of APD, who at all relevant times was acting under color of law within the course and scope of their duties as a managerial, supervisorial, and policymaking employee for the APD. DOES 9-10 was acting with the complete authority and ratification of their principal, Defendant CITY.

16. Defendant DOE 10 is a managerial, supervisorial, and policymaking employee of COUNTY, who at all relevant times was acting under color of law within the course and scope of their duties as a managerial, supervisorial, and policymaking employee for COUNTY. DOE 10 was acting with the complete authority and ratification of their principal, Defendant COUNTY.

17.14. In doing the acts and failing and omitting to act as hereinafter described, GARCIA, JORSKI, RUIZLEE, and DOES 54-8 were acting on the implied and actual permission and consent of DOES 9-10 and STATE and, CITY, and COUNTY, respectively.

18.15. In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 9-10 was acting on the implied and actual permission and consent of the CITY, and COUNTY, respectively.

19.16. The true names and capacities, whether individual, corporate, association, or otherwise of Defendants DOES 54-10, inclusive, are unknown to Plaintiffs, who otherwise sues these Defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously-named

Defendants is responsible in some manner for the conduct or liabilities alleged herein.

20.17. At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

21.18. All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

22.19. DOES 54-10 are sued in their individual capacity.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

23.20. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 22 of the foregoing paragraphs this Complaint with the same force and effect as if fully set forth herein.

24.21. On August 9, 2024, USMS Senior Inspectors Byron Branch ("BRANCH") and Brandon Koontz ("KOONTZ"), CDCR Special Agents and Special Deputy United States Marshals Addie GarciaADDI GARCIA, ("GARCIA") JASON JORSKI Jason Jorski("JORSKI"), Sylvia RuizYVLIA RUIZ ("RUIZ"), San Bernardino District Attorney's Office Investigator Anthony Semenza, Defendant MICHAEL LEE ("LEE") and DOES 54-8 responded to 1440 N. State College Blvd. in Anaheim, California, following the surveillance of DECEDENT by the U.S. Marshal federal task force.

25.22. On information and belief, as GARCIA, JORSKI, RUIZBRANCH, KOONTZ, GARCIA, JORSKI, RUIZ, SEMENZA, Defendant LEE, and DOES 4-8 approached DECEDENT, DECEDENT began to walk backwards and away from

BRANCH, KOONTZ, GARCIA, JORSKI, RUIZ, SEMENZA, Defendant LEEGARCIA, JORSKI, RUIZ, and DOES 54-8. On information and belief, as DECEDENT was walking backwards, DOE 1 Defendant LEE from APD and SEMENZAa law enforcement officer from the joint federal task force discharged their Tasers at DECEDENT, causing DECEDENT to fall to the ground.

26.23. On information and belief, almost immediately after DECEDENT fell to the ground from being Tased, GARCIA, JORSKI, RUIZJORSKI, GARCIA, BRANCH, Defendant LEE, and DOES 54-8 discharged their firearms at DECEDENT, striking and seriously wounding DECEDENT several times.

27.24. On information and belief, DECEDENT did not pose an immediate threat of death or serious bodily injury immediately prior to or at the time of the shooting. On information and belief, DECEDENT did not make any verbal threats or any threatening gesture immediately prior to or at the time of the shooting. DECEDENT never pointed a weapon at GARCIA, JORSKI, RUIZ, BRANCH, KOONTZ, SEMENZA, Defendant LEE and DOES 54-8 or anyone else immediately prior to or at the time of the shooting.

28.25. At all relevant times, GARCIA, JORSKI, RUIZ, BRANCH, KOONTZ, SEMENZA, Defendant LEE and DOES 54-8 were not faced with an immediate defense of life situation and had less-lethal alternatives available to take DECEDENT into custody.

29.26. GARCIA, JORSKI, RUIZBRANCH, Defendant LEE and DOES 54-8 failed to provide a warning that they were prepared to use lethal force prior to their use of lethal force, despite it being feasible to do so.

30.27. On information and belief, despite having knowledge that DECEDENT was seriously injured by GARCIA, JORSKI, BRANCH, Defendant LEERUIZ, and DOES 4-8's use of deadly force, GARCIA, JORSKI, BRANCH, Defendant LEERUIZ, and DOES 54-8 failed to timely summon medical care or permit medical personnel to treat DECEDENT. The delay of medical care to DECEDENT was a

contributing cause of DECEDENT's harm, injury, pain and suffering, and ultimate death.

~~31.~~28. DECEDENT sustained several gunshot wounds to his body and died as a result of his gunshot wounds.

~~32.~~29. Plaintiff DELGADILLO is DECEDENT's successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds DECEDENT's interest in this action as the natural father of DECEDENT.

~~33.~~30. Plaintiff HERNANDEZ is DECEDENT's successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds DECEDENT's interest in this action as the natural mother of DECEDENT.

~~34.~~31. On or around February 4, 2025, Plaintiffs filed a comprehensive and timely claim for damages with the City of Anaheim in substantial compliance with § 910 of the California Government Code. Over 45 days have passed without CITY acting on the submitted claims.

~~35. On or around February 4, 2025, Plaintiffs filed a comprehensive and timely claim for damages with the County of San Bernardino in substantial compliance with § 910 of the California Government Code. On or around March 14, 2025, COUNTY rejected said claims.~~

~~36.~~32. On or around February 4, 2025, Plaintiffs filed a comprehensive and timely claim for damages with the State of California in substantial compliance with § 910 of the California Government Code. Over 45 days have passed without STATE acting on the submitted claims.

**FIRST CLAIM FOR RELIEF**

**Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**

(Against Defendants LEE and DOES 5~~4~~-8)

~~37.~~33. Plaintiffs repeat and reallege each and every allegation in ~~paragraphs 1 through 36~~the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

~~38.~~34. Defendants LEE and DOES 5~~4~~-6~~8~~ used excessive and unreasonable force against DECEDENT when they deployed Tasers at DECEDENT and shot him several times. Defendants LEE and DOES 5-6~~DOES 4-8~~'s unjustified use of force deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

~~39.~~35. As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

~~40.~~36. At all relevant times, DECEDENT did not forcibly resist, nor did he pose an immediate threat of death or serious bodily injury to DOES 4-8 or anyone else.

~~41.~~37. Defendants LEE and DOES 5-6~~DOES 4-8~~'s use of force was excessive and objectively unreasonable and contrary to basic police officer training because DECEDENT posed no immediate threat of death or serious bodily injury to anyone at the time.

~~42.~~38. Defendants LEE and DOES 5-6~~DOES 4-8~~ did not exhaust all reasonable available alternative measures prior using deadly force on DECEDENT. Defendants LEE and DOES 5-6~~DOES 4-8~~ failed provide adequate commands and warnings prior to using force, including deadly force, despite it be feasible to do so.

~~43.~~39. As a result of their misconduct as described above, Defendants LEE and DOES 5-6~~DOES 4-8~~ are liable for DECEDENT's injuries, either because they were integral participants in the use of excessive force or because they failed to prevent these violations.

~~44.~~40. The conduct of Defendants LEE and DOES 5-6~~DOES 4-8~~ was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants LEE and DOES 5-6~~DOES 4-8~~.

~~45.~~41. Plaintiff DELGADILLO brings this claim as successor-in-interest to DECEDENT and seeks survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life for the violation of DECEDENT's rights. Plaintiff DELGADILLO also seeks attorneys' fees under this claim.

~~46.~~42. Plaintiff HERNANDEZ brings this claim as successor-in-interest to DECEDENT and seeks survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life for the violation of DECEDENT's rights. Plaintiff HERNANDEZ also seeks attorneys' fees under this claim.

//

//

## SECOND CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

(Against Defendants LEE and DOES 5~~4~~-6~~8~~)

~~47.~~43. Plaintiffs repeat and reallege each and every allegation in ~~paragraphs 1 through 46~~the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

~~48.~~44. Defendants LEE and DOES 5-6~~Defendants DOES 4-8~~ failed to provide much needed medical care to DECEDENT, failed to timely summon needed medical care for DECEDENT, prevented medical care personnel from timely treating DECEDENT, and refused to permit medical care personnel access to DECEDENT for care at the scene for an appreciable amount of time after the incident.

~~49.~~45. The denial of medical care by Defendants LEE and DOES 5-6~~DOES 4-8~~ deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

~~50.~~46. As a result of the foregoing, DECEDENT suffered great physical pain and suffering up to the time of his death, loss of life, loss of enjoyment of life, and loss of earning capacity.

~~51.~~47. Defendants LEE and DOES 5-6~~DOES 4-8~~ knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury, the unnecessary and wanton infliction of pain, or death, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

~~52.~~48. The conduct of Defendants LEE and DOES 5-6~~DOES 4-8~~ was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to DOES 4-8.

~~53.~~49. At all relevant times, Defendants LEE and DOES 5-6~~DOES 4-8~~ were acting under color of state law.

~~54.~~50. As a result of their misconduct as described above, Defendants LEE and DOES 5-6~~DOES 4-8~~ are liable for DECEDENT's injuries, either because they were integral participants or because they failed to prevent these violations.

~~55.~~51. Plaintiff DELGADILLO brings this claim as successor-in-interest to DECEDENT and seeks survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life for the violation of DECEDENT's rights. Plaintiff DELGADILLO also seeks attorneys' fees under this claim.

~~56.~~52. Plaintiff HERNANDEZ brings this claim as successor-in-interest to DECEDENT and seeks survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life for the violation of

DECEDENT's rights. Plaintiff HERNANDEZ also seeks attorneys' fees under this claim.

**THIRD CLAIM FOR RELIEF**

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

(Against Defendants CITY , COUNTY, and DOES 9-10)

~~57.~~53. Plaintiffs repeat and reallege each and every allegation in ~~paragraphs 1 through 56~~the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

~~58.~~54. At all relevant times, Defendants LEE and DOES 5-6~~DOES 4-8~~ were acting under color of state law.

~~59.~~55. The acts of Defendants LEE and DOES 5-6~~DOES 4-8~~ deprived DECEDENT of his rights under the United States Constitution.

~~60.~~56. The training policies of Defendant CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal.

~~61.~~57. Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately. Specifically, CITY failed to adequately train Defendants LEE and DOES 5-6~~DOES 4-5~~ with respect to detentions and arrests, tactics, use of less-lethal options, and the use of deadly force, including determining whether the use of deadly force is reasonable and appropriate under the circumstances.

~~62.~~58. The failure of Defendant CITY to provide adequate training caused the deprivation of the DECEDENT's rights by Defendants LEE and DOES 5-6~~DOES 4-5~~; that is, CITY's failure to train is so closely related to the deprivation of DECEDENT's rights as to be the moving force that caused the ultimate injury.

~~63. The training policies of Defendant COUNTY were not adequate to train its employees or agents to handle the usual and recurring situations with which they must deal. The following are only a few examples of continued conduct by~~

employees or argents working for the County of San Bernardino, which indicate the County of San Bernardino's failure to properly train its employees:

(a) In *V.R. v. County of San Bernardino, et al.*, case number 5:19-cv-01023-JGB-SP, Plaintiffs argued that the use of less-lethal and lethal munitions against decedent, Juan Ramos, was unreasonable and excessive. Prior to the uses of force, officers had responded to a call for reckless driving and had engaged in a vehicle pursuit with Mr. Ramos. The pursuit ultimately ended in a dead-end street where officers attempted to extract Mr. Ramos out of his vehicle. The officers had information that Mr. Ramos was in possession of an edged weapon. The officers broke the vehicle's front passenger window. When Mr. Ramos momentarily exited the vehicle, the officers deployed three beanbag rounds at him and Mr. Ramos reentered his vehicle. A few seconds later, Mr. Ramos exited his vehicle and ran away from the vehicle and officers with the edged weapon in his hand. As he was running in the direction of some civilians in a nearby front yard, an officer shot at Mr. Ramos in the back. Prior to the shooting, Mr. Ramos had not tried to attack anyone or stab anyone with the edged weapon. In 2022, a jury returned a $4.5 million verdict against Defendant County of San Bernardino and its involved deputies.

(b) In *M.A., et al. v. County of San Bernardino*, Case No.: 8:20-cv-00567-JFW-SHK, C.D. Cal., plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning. Deputies had responded to a domestic disturbance call and was searching in the area of an apartment complex for Mr.

Allen. The deputies located Mr. Allen in the laundry room and ordered Mr. Allen to exit the laundry room with his hands up. It is believed that at some point, Mr. Allen was in possession of a knife, but at the time of the shooting, Mr. Allen's hands were up, open, and empty and Mr. Allen was facing away from the deputies. At no time prior to the shooting did it appear that Mr. Allen was going to attack or seriously injure the deputies. Mr. Allen was not an immediate threat of death or serious bodily injury. Two deputies were present at the time of the shooting, but one deputy claimed that he did not shoot. Despite several percipient witnesses indicating that they had seen both deputies shoot and there being a discrepancy in the number of bullets fired and the forensic evidence at the scene indicating that more shots had been fired than the weapon round count indicated, an investigator for COUNTY testified that he chose not to take the second deputy's gun into custody and did not do a bullet analysis on the second deputy's gun because the investigator did not want to disbelieve the second deputy or accuse him of lying. The Lethal Force Encounters ("LFE") Review Board makes recommendations to the Sheriff regarding whether the LFE was in policy, whether it was intentional or accidental, whether training and/or policy issues have been addressed appropriately, and whether to close the case pending the results of the District Attorney's review. The LFE Review Board sends the Sheriff a Findings and Recommendations Memorandum. The Sheriff reviews and ultimately approves the findings and recommendations. The shooting of Mr. Allen was found to be not out of policy. In 2021, the case settled for a seven-figure

settlement. On information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

(b) In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Plaintiff alleged that San Bernardino County Sheriff's Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. Plaintiff was in a moving slow-moving vehicle and no one, including any of the deputies, were in the direct path of the vehicle when deputies shot numerous times into the side of the vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

(c) In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. Mr. Factor was a passenger inside a car that had been pulled over. When a deputy opened the passenger door, Mr. Factor stepped out and started to run away. The deputy grabbed Mr. Factor's hand and Mr. Factor wrapped his arms around the deputy. Another deputy tased Mr. Factor and then yelled out "gun," even though Mr. Factor was unarmed. The deputy who had tased Mr. Factor then shot at Mr. Factor while Mr. Factor was halfway in the car. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

(d) In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The deputies had responded to a domestic disturbance call wherein Luis Ranero was barricaded inside the home. After some time had passed, Mr. Ranero exited the house and was given commands to show his hands. Mr. Ranero complied with commands to show his hands and brought his hands up, with one hand holding a yellow-colored bottle of Muscle Milk. Deputies shot at Mr. Ranero despite Mr. Ranero being unarmed, was complying commands at the time of the shooting, and was not posing a threat prior to or at the time of the shooting. The COUNTY ratified the deputies' conduct, finding the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

(e) In *Archibald v. County of San Bernardino*, case number 5-16-cv-1128, Plaintiff argued that the involved San Bernardino County Sheriff's deputy used deadly force against the unarmed Nathanael Pickett when he posed no immediate threat. The deputy initially made contact with Mr. Pickett because Mr. Pickett looked at him while crossing a marked crosswalk at night. The deputy followed Mr. Pickett onto the grounds of a motel and attempted to detain Mr. Pickett, despite there being no reasonable suspicion to detain. Mr. Pickett refused to stop and continued to walk away from the deputy. The deputy pursued Mr. Pickett and as Mr. Pickett was attempting to get away, Mr. Pickett tripped and fell. While Mr. Pickett was on the ground, the

deputy threatened to tase Mr. Pickett. The deputy then went hands-on with Mr. Pickett with the intention of handcuffing him. When Mr. Pickett resisted, the deputy struck Mr. Pickett several times and a struggled ensued as Mr. Pickett tried to get away. While both were on the ground, with the deputy on top of Mr. Pickett, the deputy pulled out his gun and shot and killed Mr. Pickett. The jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and the deputy. The COUNTY ratified the deputy's conduct, found the detention and shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputy for his conduct. The COUNTY negligently retained the deputy following this shooting, which resulted in a subsequent shooting by the same deputy of another unarmed man, for which the COUNTY settled with the victim prior to any litigation.

(f) In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting of Lajuana Phillips was excessive and unreasonable. A deputy had initially responded to a call regarding a woman who had punched someone at a local business. The deputy made contact with Ms. Phillips and deployed OC spray into the vehicle Ms. Phillips was in when Ms. Phillips refused to exit the vehicle. When Ms. Phillips started to slowly drive away, the deputy shot into the side of the vehicle and killed Ms. Phillips. Neither the deputy nor anyone else was in the pathway of the vehicle when the deputy shot into the vehicle. Ms. Phillips did not pose an immediate threat of death or serious bodily injury when the deputy shot and killed her.

(g) In *Young v. County of San Bernardino, et al.*, case number 5:15-CV- 01102-JGB-SP, Plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable. Deputies, searching for a murder suspect, went to the wrong house. Mr. Young was visiting residents of the house at the time the deputies arrived and did not match the description of the murder suspect. At some point, the deputies attempted to quietly approach Mr. Young from behind. Upon hearing footsteps, Mr. Young began to turn around and almost simultaneously heard "let me see your hands." As Mr. Young was turning around, the deputies shot Mr. Young and Mr. Young immediately dropped to the floor. While Mr. Young had knives in his waistband, at no point prior to or during the shooting did Mr. Young attempt to reach for his waistband. After Mr. Young fell to the ground, the deputies continued to shoot Mr. Young several times while he was on the ground. In 2016 a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

64. Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately. Specifically, COUNTY failed to adequately train DOES 6-8 with respect to detentions and arrests, tactics, use of less-lethal options, and the use of deadly force, including determining whether the use of deadly force is reasonable and appropriate under the circumstances.

65. The failure of Defendant COUNTY to provide adequate training caused the deprivation of the DECEDENT's rights by DOES 6-8; that is, COUNTY's failure to train is so closely related to the deprivation of DECEDENT's rights as to be the moving force that caused the ultimate injury.

~~66.~~59. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

~~67.~~60. Accordingly, Defendants LEE and DOES 5-6~~Defendants DOES 4-8~~ each are liable to Plaintiffs and DECEDENT for compensatory damages under 42 U.S.C. § 1983.

~~68.~~61. Plaintiff DELGADILLO brings this claim as successor-in-interest to DECEDENT and seeks survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life for the violation of DECEDENT's rights. Plaintiff DELGADILLO also seeks attorneys' fees under this claim.

~~69.~~62. Plaintiff HERNANDEZ brings this claim as successor-in-interest to DECEDENT and seeks survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life for the violation of DECEDENT's rights. Plaintiff HERNANDEZ also seeks attorneys' fees under this claim.

## FOURTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(Against Defendants CITY~~, COUNTY,~~ and DOES 9-10)

~~70.~~63. Plaintiff repeats and realleges each and every allegation in ~~paragraphs 1 through 68~~the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

~~71.~~64. At all relevant times, Defendants LEE and DOES 5-6~~DOES 4-8~~ were acting under color of state law.

72.65. When Defendants LEE and DOES 5-6DOES 4-8 used excessive force against DECEDENT, shot and killed DECEDENT, and denied him timely medical attention, they acted pursuant to an expressly adopted official policy/ies or a longstanding practice(s) or custom of the Defendants CITY, and COUNTY respectively.

73.66. On information and belief, Defendants LEE and DOES 5-6DOES 4-8 were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of lethal force against DECEDENT.

74.67. Defendants CITY, COUNTY, and DOES 9-10, together with other CITY, and COUNTY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a) Using excessive force, including excessive deadly force;

(b) Providing inadequate training regarding the use of deadly force;

(c) Employing and retaining as officers individuals whom Defendants CITY and COUNTY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(d) Inadequately supervising, training, controlling, assigning, and disciplining employees and other personnel, whom Defendants CITY and COUNTY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(e) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by CITY and COUNTY's respective employees and agents;

(f) Failing to adequately discipline CITY and COUNTY's respective employees and agents for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g) Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

(h) Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

(i) Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing;

(j) Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people.

75.68. Other systemic deficiencies, policies, customs, and practices which indicated, and continue to indicate, a deliberate indifference to the violations of the

civil rights by the COUNTY and CITY employees and employees that COUNTY and CITY were respectively aware of, and have condoned and ratified include:

(a) Preparation of investigative reports designed to vindicate the use of excessive use of force, regardless of whether such force was justified;

(b) Preparation of investigative reports which uncritically rely solely on the word of sheriff's deputies and police officers involved in the assault, battery, excessive use of force incidents and which systematically fail to credit testimony by non-police witnesses;

(c) Preparation of investigative reports which omit factual information and physical evidence which contradicts the accounts of the officers involved;

(d) Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigations of the excessive use of force;

(e) Failure to objectively and independently review investigative reports by responsible superior officers for accuracy or completeness and acceptance of conclusions which are unwarranted by the evidence of the wrongful shooting, assault, excessive use of deadly force, or which contradict such evidence.

76.69. Defendants CITY, COUNTY and DOES 9-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT and other individuals similarly situated.

~~77.~~70. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, CITY~~, COUNTY,~~ and DOES 9-10 acted with intentional, reckless, and callous disregard for the life and constitutional rights of Plaintiffs and DECEDENT. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY~~, COUNTY,~~ and DOES 9-10 were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiffs and DECEDENT.

~~78. The following are only a few examples of cases where San Bernardino County Sheriff's Department Deputies were not disciplined, reprimanded, retained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the COUNTY routinely ratifies such behavior, fails to train its Deputies, and maintains a practice of allowing such behavior:~~

~~(a) In *V.R. v. County of San Bernardino, et al.*, case number 5:19-cv-01023-JGB-SP, Plaintiffs argued that the use of less-lethal and lethal munitions against decedent, Juan Ramos, was unreasonable and excessive. Prior to the uses of force, officers had responded to a call for reckless driving and had engaged in a vehicle pursuit with Mr. Ramos. The pursuit ultimately ended in a dead-end street where officers attempted to extract Mr. Ramos out of his vehicle. The officers had information that Mr. Ramos was in possession of an edged weapon. The officers broke the vehicle's front passenger window. When Mr. Ramos momentarily exited the vehicle, the officers deployed three beanbag rounds at him and Mr. Ramos reentered his vehicle. A few seconds later, Mr. Ramos exited his vehicle and ran away from the vehicle and officers with the edged weapon in his hand. As he was running in the direction of some civilians in a nearby~~

front yard, an officer shot at Mr. Ramos in the back. Prior to the shooting, Mr. Ramos had not tried to attack anyone or stab anyone with the edged weapon. In 2022, a jury returned a $4.5 million verdict against Defendant County of San Bernardino and its involved deputies.

(b) In *M.A., et al. v. County of San Bernardino*, Case No.: 8:20-cv-00567-JFW-SHK, C.D. Cal., plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning. Deputies had responded to a domestic disturbance call and was searching in the area of an apartment complex for Mr. Allen. The deputies located Mr. Allen in the laundry room and ordered Mr. Allen to exit the laundry room with his hands up. It is believed that at some point, Mr. Allen was in possession of a knife, but at the time of the shooting, Mr. Allen's hands were up, open, and empty and Mr. Allen was facing away from the deputies. At no time prior to the shooting did it appear that Mr. Allen was going to attack or seriously injure the deputies. Mr. Allen was not an immediate threat of death or serious bodily injury. Two deputies were present at the time of the shooting, but one deputy claimed that he did not shoot. Despite several percipient witnesses indicating that they had seen both deputies shoot and there being a discrepancy in the number of bullets fired and the forensic evidence at the scene indicating that more shots had been fired than the weapon round count indicated, an investigator for COUNTY testified that he chose not to take the second deputy's gun into custody and did not do a bullet analysis on the second deputy's gun because the investigator did not want

~~to disbelieve the second deputy or accuse him of lying. The Lethal Force Encounters ("LFE") Review Board makes recommendations to the Sheriff regarding whether the LFE was in policy, whether it was intentional or accidental, whether training and/or policy issues have been addressed appropriately, and whether to close the case pending the results of the District Attorney's review. The LFE Review Board sends the Sheriff a Findings and Recommendations Memorandum. The Sheriff reviews and ultimately approves the findings and recommendations. The shooting of Mr. Allen was found to be not out of policy. In 2021, the case settled for a seven-figure settlement. On information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this incident.~~

~~(c) In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Plaintiff alleged that San Bernardino County Sheriff's Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. Plaintiff was in a moving slow-moving vehicle and no one, including any of the deputies, were in the direct path of the vehicle when deputies shot numerous times into the side of the vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.~~

~~(d) In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor~~

was unreasonable. Mr. Factor was a passenger inside a car that had been pulled over. When a deputy opened the passenger door, Mr. Factor stepped out and started to run away. The deputy grabbed Mr. Factor's hand and Mr. Factor wrapped his arms around the deputy. Another deputy tased Mr. Factor and then yelled out "gun," even though Mr. Factor was unarmed. The deputy who had tased Mr. Factor then shot at Mr. Factor while Mr. Factor was halfway in the car. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

(e) In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The deputies had responded to a domestic disturbance call wherein Luis Ranero was barricaded inside the home. After some time had passed, Mr. Ranero exited the house and was given commands to show his hands. Mr. Ranero complied with commands to show his hands and brought his hands up, with one hand holding a yellow-colored bottle of Muscle Milk. Deputies shot at Mr. Ranero despite Mr. Ranero being unarmed, was complying commands at the time of the shooting, and was not posing a threat prior to or at the time of the shooting. The COUNTY ratified the deputies' conduct, finding the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

(f) In *Archibald v. County of San Bernardino*, case number 5-16-cv-1128, Plaintiff argued that the involved San Bernardino County

Sheriff's deputy used deadly force against the unarmed Nathanael Pickett when he posed no immediate threat. The deputy initially made contact with Mr. Pickett because Mr. Pickett looked at him while crossing a marked crosswalk at night. The deputy followed Mr. Pickett onto the grounds of a motel and attempted to detain Mr. Pickett, despite there being no reasonable suspicion to detain. Mr. Pickett refused to stop and continued to walk away from the deputy. The deputy pursued Mr. Pickett and as Mr. Pickett was attempting to get away, Mr. Pickett tripped and fell. While Mr. Pickett was on the ground, the deputy threatened to tase Mr. Pickett. The deputy then went hands-on with Mr. Pickett with the intention of handcuffing him. When Mr. Pickett resisted, the deputy struck Mr. Pickett several times and a struggled ensued as Mr. Pickett tried to get away. While both were on the ground, with the deputy on top of Mr. Pickett, the deputy pulled out his gun and shot and killed Mr. Pickett. The jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and the deputy. The COUNTY ratified the deputy's conduct, found the detention and shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputy for his conduct. The COUNTY negligently retained the deputy following this shooting, which resulted in a subsequent shooting by the same deputy of another unarmed man, for which the COUNTY settled with the victim prior to any litigation.

(g) In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting of Lajuana Phillips was excessive and unreasonable. A deputy

had initially responded to a call regarding a woman who had punched someone at a local business. The deputy made contact with Ms. Phillips and deployed OC spray into the vehicle Ms. Phillips was in when Ms. Phillips refused to exit the vehicle. When Ms. Phillips started to slowly drive away, the deputy shot into the side of the vehicle and killed Ms. Phillips. Neither the deputy nor anyone else was in the pathway of the vehicle when the deputy shot into the vehicle. Ms. Phillips did not pose an immediate threat of death or serious bodily injury when the deputy shot and killed her.

(h) In *Young v. County of San Bernardino, et al.*, case number 5:15-CV- 01102-JGB-SP, Plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable. Deputies, searching for a murder suspect, went to the wrong house. Mr. Young was visiting residents of the house at the time the deputies arrived and did not match the description of the murder suspect. At some point, the deputies attempted to quietly approach Mr. Young from behind. Upon hearing footsteps, Mr. Young began to turn around and almost simultaneously heard "let me see your hands." As Mr. Young was turning around, the deputies shot Mr. Young and Mr. Young immediately dropped to the floor. While Mr. Young had knives in his waistband, at no point prior to or during the shooting did Mr. Young attempt to reach for his waistband. After Mr. Young fell to the ground, the deputies continued to shoot Mr. Young several times while he was on the ground. In 2016 a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

~~79.~~71. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

~~80.~~72. Accordingly, Defendants LEE and DOES 5-6~~DOES 4-8~~ each are liable to Plaintiff and DECEDENT for compensatory damages under 42 U.S.C. § 1983.

~~81.~~73. Plaintiff DELGADILLO brings this claim as successor-in-interest to DECEDENT and seeks survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life for the violation of DECEDENT's rights. Plaintiff DELGADILLO also seeks attorneys' fees under this claim.

~~82.~~74. Plaintiff HERNANDEZ brings this claim as successor-in-interest to DECEDENT and seeks survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life for the violation of DECEDENT's rights. Plaintiff HERNANDEZ also seeks attorneys' fees under this claim.

## FIFTH CLAIM FOR RELIEF

### Substantive Due Process (42 U.S.C. § 1983)

(Against Defendants LEE and DOES 5-6~~DOES 4-8~~)

~~83.~~75. Plaintiffs repeat and re-allege each and every allegation in ~~paragraphs 1 through 82~~the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

~~84.~~76. Plaintiffs DELGADILLO and HERNANDEZ, and each of them, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not

limited to unwarranted state interference in the plaintiffs' familial relationship with their son, DECEDENT.

~~85.~~77. DECEDENT himself had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive his of life, liberty, or property in such a manner as to shock the conscience.

~~86.~~78. The aforementioned actions of Defendants LEE and DOES 5-6~~DOES 4-8~~, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Plaintiffs and Decedent, and with purpose to harm unrelated to any legitimate law enforcement objective.

~~87.~~79. As a direct and proximate result of these actions, DECEDENT experienced pain and suffering and eventually died. Defendants LEE and DOES 5-6~~DOES 4-8~~ thus violated the substantive due process rights of Plaintiffs and Decedent to be free from unwarranted interference with their familial relationship with each other.

~~88.~~80. As a direct and proximate cause of the acts of Defendants LEE and DOES 5-6~~DOES 4-8~~, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

~~89.~~81. The conduct of Defendants LEE and DOES 5-6~~DOES 4-8~~ was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Defendants LEE and DOES 5-6~~DOES 4-8~~.

~~90.~~82. Plaintiffs DELGADILLO and HERNANDEZ bring this claim individually and as a successors-in-interest to the DECEDENT, and seek survival damages and wrongful death damages for the violation of their rights and

DECEDENT's rights. Plaintiffs DELGADILLO and HERNANDEZ also seek attorney's fees under this claim.

~~**SIXTH CLAIM FOR RELIEF**~~

~~**Unreasonable Search and Seizure—Excessive Force (*Bivens*)**~~

~~(Against Defendants DOES 6-8)~~

~~91. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 90 of this Complaint with the same force and effect as if fully set forth herein.~~

~~92. DOES 6-8 used excessive and unreasonable force against DECEDENT when they deployed Tasers at DECEDENT and shot him several times. DOES 6-8's unjustified use of force deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.~~

~~93. As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.~~

~~94. At all relevant times, DECEDENT did not forcibly resist, nor did he pose an immediate threat of death or serious bodily injury to DOES 6-8 or anyone else.~~

~~95. DOES 6-8's use of force was excessive and objectively unreasonable and contrary to basic police officer training because DECEDENT posed no immediate threat of death or serious bodily injury to anyone at the time.~~

~~96. DOES 6-8 did not exhaust all reasonable available alternative measures prior using deadly force on DECEDENT. DOES 6-8 failed provide adequate commands and warnings prior to using force, including deadly force, despite it be feasible to do so.~~

97. As a result of their misconduct as described above, DOES 6-8 are liable for DECEDENT's injuries, either because they were integral participants in the use of excessive force or because they failed to prevent these violations.

98. The conduct of DOES 6-8 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to DOES 6-8.

99. Plaintiff DELGADILLO brings this claim as successor-in-interest to DECEDENT and seeks survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life for the violation of DECEDENT's rights. Plaintiff DELGADILLO also seeks attorneys' fees under this claim.

100. Plaintiff HERNANDEZ brings this claim as successor-in-interest to DECEDENT and seeks survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life for the violation of DECEDENT's rights. Plaintiff HERNANDEZ also seeks attorneys' fees under this claim.

**SEVENTH CLAIM FOR RELIEF**

**Substantive Due Process (*Bivens*)**

(Against Defendants DOES 6-8)

101. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 100 of this Complaint with the same force and effect as if fully set forth herein.

102. Plaintiffs DELGADILLO and HERNANDEZ, and each of them, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not

~~limited to unwarranted state interference in the plaintiffs' familial relationship with their son, DECEDENT.~~

~~103. DECEDENT himself had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive his of life, liberty, or property in such a manner as to shock the conscience.~~

~~104. The aforementioned actions of GARCIA, JORSKI, RUIZ, and DOES 6-8, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Plaintiffs and Decedent, and with purpose to harm unrelated to any legitimate law enforcement objective.~~

~~105. As a direct and proximate result of these actions, DECEDENT experienced pain and suffering and eventually died. GARCIA, JORSKI, RUIZ, and DOES 6-8 thus violated the substantive due process rights of Plaintiffs and Decedent to be free from unwarranted interference with their familial relationship with each other.~~

~~106. As a direct and proximate cause of the acts of DOES 6-8, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.~~

~~107. The conduct of DOES 6-8 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to DOES 6-8.~~

~~108.~~83. ~~Plaintiffs DELGADILLO and HERNANDEZ bring this claim individually and as a successors-in-interest to the DECEDENT, and seek survival damages and wrongful death damages for the violation of their rights and~~

DECEDENT's rights. Plaintiffs DELGADILLO and HERNANDEZ also seek attorney's fees under this claim.

**EIGHTH SIXTH CLAIM FOR RELIEF**

**Battery (Wrongful Death)**

(Against Defendants CITY, COUNTY, STATE and DOES 4-8All Defendants)

109.84. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 107 the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

85. At all relevant times, BRANCH and DOES 7-8 were working as Senior Inspectors or Deputy Marshals for USMS and was acting within the course and scope of their duties as employees for USMS.

110.86. At all relevant times, GARCIA and, JORSKI, and RUIZ were working as Special Agents for CDCR and was acting within the course and scope of their duties as employees for CDCR. At all relevant times, GARCIA and JORSKI, were also working as Special Deputy U.S. Marshals for the United States Marshal Service and was acting within the course and scope of their duties as employees for USMS.

111.87. At all relevant times, DOES 4-5Defendants LEE and DOES 5-6 were working as police officers for APD and was acting within the course and scope of their duties as police officers for APD.

112. At all relevant times, DOES 6-8 were working as law enforcement officers, employees, or agents for COUNTY and were acting within the course and scope of their duties as law enforcement officers, employees, or agents for COUNTY.

113.88. GARCIA, and JORSKI, RUIZ, and DOES 6-8 while working as law enforcement officers, employees, or agents of CITY, COUNTY, or STATE and the United States, BRANCH and DOES 7-8, while working as employees or agents

of the United States, and Defendant LEE and DOES 5-6, while working as law enforcement officers, employees, or agents of CITY~~respectively~~, and acting within the course and scope of their duties, intentionally deployed Tasers at DECEDENT, shot DECEDENT multiple times, and used unreasonable and excessive force against him. As a result of the actions of GARCIA, JORSKI, ~~RUIZ,~~BRANCH, Defendant LEE and DOES 5~~6~~-8, DECEDENT ultimately died from his injuries. ~~DOES 1-7~~GARCIA, JORSKI, BRANCH, Defendant LEE, and DOES 5-8 had no legal justification for using force against DECEDENT, and their use of force while carrying out their duties as police officers was an unreasonable and non-privileged use of force.

~~114.~~89. As a direct and proximate result of the conduct of GARCIA, JORSKI, ~~RUIZ,~~BRANCH, Defendant LEE and DOES 5~~6~~-8 as alleged above, DECEDENT sustained injuries and died from his injuries and also lost his earning capacity.

~~115.~~90. The CITY is vicariously liable for the wrongful acts of Defendants LEE and DOES 5~~4~~-6~~5~~ pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

~~116. The COUNTY is vicariously liable for the wrongful acts of DOES 6-8 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.~~

~~117.~~91. The STATE is vicariously liable for the wrongful acts of GARCIA and~~,~~ JORSKI~~, and RUIZ~~ pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

~~118.~~92. The conduct of ~~DOES 6-8~~GARCIA, JORSKI, BRANCH, Defendant LEE, and DOES 5-8 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT, entitling Plaintiffs, as successors-in-interest to DECEDENT, to an award of exemplary and punitive damages, which Plaintiffs seek under this claim.

~~119.~~93. Plaintiff DELGADILLO brings this claim individually and as a successor-in-interest to DECEDENT. Plaintiff DELGADILO seeks survival damages and wrongful death damages, including pre-death pain and suffering, under this claim.

~~120.~~94. Plaintiff HERNANDEZ brings this claim individually and as a successor-in-interest to DECEDENT. Plaintiff HERNANDEZ seeks survival damages and wrongful death damages, including pre-death pain and suffering, under this claim.

**NINTH CLAIM FOR RELIEF**

**Negligence (Wrongful Death)**

(Against all Defendants)

~~121.~~95. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs~~paragraphs 1 through 120~~ of this Complaint with the same force and effect as if fully set forth herein.

~~122.~~96. The actions and inactions of Defendants were negligent and reckless, including but not limited to:

(a) GARCIA, JORSKI, RUIZ, BRANCH, Defendant LEE, and DOES 5-8~~and DOES 4-8~~'s failure to properly and adequately assess the need to detain, arrest, and use force and/or deadly force against Plaintiff;

(b) GARCIA, JORSKI, RUIZ, BRANCH, Defendant LEE, and DOES 5-8and DOES 4-8's negligent tactics and handling of the situation with DECEDENT, including pre-force negligence;

(c) GARCIA, JORSKI, RUIZ, BRANCH, Defendant LEE, and DOES 5-8and DOES 4-8's negligent detention, arrest, and use of force, against DECEDENT;

(d) GARCIA, JORSKI, RUIZ, BRANCH, Defendant LEE, and DOES 5-8and DOES 4-8's failure to provide prompt medical care to DECEDENT,

(e) the CITY, COUNTY, and STATE's failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT.

123.97. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT ultimately died. Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

124.98. The CITY is vicariously liable for the wrongful acts of Defendants LEE and DOES 54-65 and DOE 9-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

125.99. The COUNTY is vicariously liable for the wrongful acts of DOES 6-8 and DOE 10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its

~~employees within the scope of the employment if the employee's act would subject him or her to liability.~~

~~126.~~100. The STATE is vicariously liable for the wrongful acts of GARCIA, JORSKI, and RUIZ pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

~~127.~~101. Plaintiff DELGADILLO brings this claim individually and as a successor-in-interest to DECEDENT. Plaintiff DELGADILLO seeks survival damages and wrongful death damages, including pre-death pain and suffering, under this claim.

~~128.~~102. Plaintiff HERNANDEZ brings this claim individually and as a successor-in-interest to DECEDENT. Plaintiff HERNANDEZ seeks survival damages and wrongful death damages, including pre-death pain and suffering, under this claim.

## TENTH CLAIM FOR RELIEF

**Violation of Cal. Civil Code § 52.1 (Bane Act)**

(Against All Defendants)

~~129.~~103. Plaintiffs repeat and reallege each and every allegation in ~~paragraphs 1 through 128~~the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

~~130.~~104. California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights. An intent to violate a person's civil rights can be inferred by a reckless disregard for the person's civil rights.

~~131.~~105. On information and believe, GARCIA, JORSKI, and RUIZ, while working for STATE and acting within the course and scope of their duties as Special Agents for CDCR, intentionally committed and attempted to commit acts of violence against DECEDENT and also acted with a reckless disregard for DECEDENT's civil rights, including by shooting him without justification or excuse, and by denying him necessary medical care.

~~132.~~106. On information and believe, Defendants LEE and DOES 5~~4~~-6~~5~~, while working for CITY and acting within the course and scope of their duties as police officers, intentionally committed and attempted to commit acts of violence against DECEDENT and also acted with a reckless disregard for DECEDENT's civil rights, including by shooting him without justification or excuse, and by denying him necessary medical care.

~~133. On information and believe, DOES 6-8, while working for COUNTY and acting within the course and scope of their duties as police officers, employees, or agents of COUNTY, intentionally committed and attempted to commit acts of violence against DECEDENT and also acted with a reckless disregard for DECEDENT's civil rights, including by shooting him without justification or excuse, and by denying him necessary medical care.~~

~~134.~~107. When GARCIA, JORSKI, ~~RUIZ,~~Defendant LEE and DOES ~~4~~5-6~~8~~ discharged Tasers at DECEDENT and shot DECEDENT, they interfered with his civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

~~135.~~108. On information and belief, GARCIA, JORSKI, ~~RUIZ,~~Defendant LEE and DOES 5~~4~~-6~~8~~ intentionally and spitefully committed the above acts to discourage DECEDENT from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was and is fully entitled to enjoy.

~~136.~~109. On information and belief, DECEDENT reasonably believed and understood that the violent acts committed by GARCIA, JORSKI, ~~RUIZ,~~ Defendant LEE and DOES 54-68 were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

~~137.~~110. GARCIA, JORSKI, ~~RUIZ,~~Defendant LEE and DOES 54-68 intentionally and successfully interfered with the above civil rights of DECEDENT, including his right to be free from excessive force, and acted with a reckless disregard for these rights.

~~138.~~111. The conduct of Defendants was a substantial factor in causing DECEDENT's harms, losses, injuries, and damages.

~~139.~~112. The CITY is vicariously liable for the wrongful acts of Defendants LEE and DOES 54-65 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

~~140. The COUNTY is vicariously liable for the wrongful acts of DOES 6-8 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.~~

~~141.~~113. The STATE is vicariously liable for the wrongful acts of GARCIA, JORSKI, and RUIZ pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

~~142.~~114. Defendants DOES 9-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

~~143.~~115. ~~DOES 4-8~~GARCIA, JORSKI, Defendant LEE, and DOES 5-6's conduct was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's rights, justifying an award of exemplary and punitive damages as to GARCIA, JORSKI, Defendant LEE, and DOES 5-6~~DOES 4-8~~.

~~144.~~116. Plaintiff DELGADILLO brings this claim as successor-in-interest to DECEDENT and seeks survival damages, including emotional distress, loss of life, and loss of enjoyment of life under this claim. Plaintiff DELGADILLO also seeks treble damages, punitive damages, attorney's fees, and costs under this claim.

~~145.~~117. Plaintiff HERNANDEZ brings this claim as successor-in-interest to DECEDENT and seeks survival damages, including emotional distress, loss of life, and loss of enjoyment of life under this claim. Plaintiff HERNANDEZ also seeks treble damages, punitive damages, attorney's fees, and costs under this claim.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs LUIS DELGADILLO and MELISSA HERNANDEZ, requests entry of judgment in their favor and against Defendants CITY OF ANAHEIM, ~~COUNTY OF SAN BERNARDINO,~~ STATE OF CALIFORNIA, MICHAEL LEE, and DOES 5~~4~~-10, inclusive, as follows:

A. For compensatory damages in whatever other amount may be proven at trial, including both survival damages and wrongful death damages under federal and state law;

B. For funeral and burial expenses, and loss of financial support;

C. For punitive damages against the individual defendants in an amount to be proven at trial;

D. For statutory damages;

E. For treble damages pursuant to California Civil Code Sections 52, 52.1;

F. For interest;

G. For reasonable attorneys' fees, including litigation expenses;

H. For costs of suit; and

I. For such further other relief as the Court may deem just, proper, and appropriate.

DATED: September 9, 2026 LAW OFFICES OF DALE K. GALIPO

By *s/ Hang D. Le*
Dale K. Galipo
Hang D. Le
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

DATED: September 9, 2026 LAW OFFICES OF DALE K. GALIPO

By *s/ Hana D. Le*
Dale K. Galipo
Hang D. Le
Attornevs for Plaintiffs